Filed 9/20/22  P. v. Penesa CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B309907 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA052000) |
| v. | |
| EUGENE PENESA, | |
| Defendant and Appellant. | |

APPEAL from order of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Affirmed.

Gail Harper, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Rama R. Maline, Deputy Attorneys General for Plaintiff and Respondent.

————————

In 1999 a jury convicted Eugene Penesa of the first degree murder of Judy Rodriguez, the attempted willful, deliberate, and premeditated murder of Judy's aunt, Maria Rodriguez,[1] and first degree burglary. The jury also found true the special circumstance that the murder was committed during the burglary and that in the commission of the murder, Penesa personally used and discharged a firearm, causing the death of Judy, and he personally used and discharged a firearm in the attempted murder of Maria. Penesa appealed, and we affirmed. (*People v. Penesa* (Aug. 22, 2001, B136925) [nonpub. opn.] (*Penesa I*).)

In 2020 Penesa, representing himself, filed a petition for resentencing seeking to vacate his murder conviction and be resentenced pursuant to Penal Code former section 1170.95 (now section 1172.6).[2] The trial court summarily denied Penesa's petition without appointing counsel on the basis Penesa was ineligible for resentencing as a matter of law because he was the actual killer.

On appeal, Penesa argues the trial court's order summarily denying his petition should be reversed and the case remanded to the trial court for the court to appoint counsel for Penesa, issue an order to show cause, and conduct an evidentiary hearing. In addition, although Penesa's petition only sought resentencing on his murder conviction, he argues that under the amendments to section 1170.95 by Senate Bill No. 775 (2021-2022 Reg. Sess.)

---

[1]    We refer to Judy and Maria Rodriguez and Penesa's family members by their first names to avoid confusion.

[2]    Effective June 30, 2022, Penal Code section 1170.95 was renumbered as section 1172.6 with no change in the text. (Stats. 2022, ch. 58, § 10.) Further statutory references are to the Penal Code.

2

(Stats. 2021, ch. 551, § 2) (Senate Bill 775), effective January 1, 2022, on remand the superior court should issue an order to show cause as to his attempted murder conviction as well.

The People concede the superior court erred in denying Penesa's petition without appointing counsel and issuing an order to show cause, but they argue the error was harmless because Penesa was the actual killer and therefore ineligible for relief. As to Penesa's conviction for attempted murder, the People contend he is not entitled to relief because he did not include attempted murder in his petition, and in any event, the jury was not instructed on the natural and probable consequences doctrine.

We conclude the superior court's error in summarily denying Penesa's petition for resentencing was harmless because the record shows with respect to his murder conviction that he was the actual killer, and as to his attempted murder conviction, the jury was instructed that to find Penesa guilty, it had to find he had an intent to kill. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Evidence at Trial*[3]

In 1988 Maria lived on Neptune Avenue in Carson with her niece, Judy. In the early morning of June 30, 1988, Maria heard Judy close the bathroom door. Seconds later, Maria heard someone try to open her bedroom door. Maria called out to Judy, but there was no response. Maria called 911; as she was requesting help, she heard gunshots and saw wood fragments fly

---

[3]    We provide a recitation of the facts from the trial only as background.

3

into her room. Maria dropped to the floor and stayed on the telephone with the 911 operator. Judy then got on the call and said, "I have been shot." Maria stayed on the telephone with Judy and the 911 operator. Maria heard Judy moaning; then the moaning stopped. The police arrived and assisted Maria in fleeing the house.

The police found Judy's body lying face up in the rear of the kitchen by the back door. She had wood splinters in her hair consistent with wood fragments that were found in the bathroom. An autopsy performed on Judy found 21 shotgun pellets in her body. The deputy medical examiner opined at trial the cause of death was a shotgun wound to the chest. The following day Maria returned to her home and observed that her television was missing.

Virginia Trujillo, who lived about three houses from Maria, was watching television at around 1:00 in the morning when she thought she heard fireworks. She looked out her front window and saw two men run from the direction of Maria's house to a small, black car that looked like the car depicted in a photograph of Penesa's father's car. A third man carrying a small television followed, and the three men left in the car. Rosalva Magana, who lived across the street from Maria, heard what she thought were gunshots and looked out the window. She saw three men running to a black car parked about three houses away. The last man carried a television.

As part of their investigation, Los Angeles County Sheriff's Detective Steven Davis and his partner interviewed Penesa's sister, Jennifer Penesa. An audiotape of the interview was played for the jury. The officers cautioned Jennifer that she could get into trouble if she did not cooperate. Jennifer told the

4

officers that at the end of June 1998 Penesa came to visit her in Carson. Jennifer lived 10 to 15 minutes from Neptune Street. During his visit, Penesa asked Jennifer if she heard the news about the "the girl that got shot on Neptune." Jennifer said she had not, and Penesa responded, "I did it." He said he was drunk and shot the woman when she came out of the bathroom because she had seen him. Penesa told Jennifer that he and his friends Pesa Matautia and Half-Breed were together and took a television. After this conversation, Penesa packed up his belongings and left. Before he left, he gave Jennifer a shotgun, which he said Matautia would pick up. Matautia did not come, and Jennifer disposed of the shotgun in the Los Angeles River. At trial, however, Jennifer testified she lied to the detectives about most of what she said during the interviews because she had a gun that did not belong to her.

Detective Davis and his partner also interviewed Penesa's aunt, Faapio Penesa. An audiotape recording of the interview was played for the jury. On June 29 Penesa and his friends Matautia, Half-Breed, and Sefa Goa spent time together drinking outside Faapio's apartment building until about 1:30 or 2:00 the next morning. The next day Penesa inquired whether she had heard the news about the girl on Neptune. Faapio had not, and Penesa said, "I did it" and that he and his friends "did that home invasion." At trial Faapio testified she did not recall Penesa telling her that Penesa had killed a girl as part of a home invasion robbery or that Faapio relayed this to the police.

Detective Davis and his partner also interviewed Faapio's fiance, John Cruz. An audiotape of the interview was played at trial. Cruz confirmed that between 5:00 and 6:00 p.m. on June 29, 1998, Penesa, Matautia, and Half-Breed arrived at Faapio's

5

house in Penesa's father's black four-door Ford Escort. They spent time together outside into the early morning. Penesa opened the trunk of the car, and Cruz could see a 12-gauge shotgun with a cut-off handle wrapped in tape. At around 1:00 in the morning, Penesa fired the shotgun one time into the air. A few days later Penesa's sister, Jennifer, showed Cruz the same shotgun in her house.

The jury convicted Penesa of first degree murder (§ 187, subd. (a)(2)) and found true the special allegation that in the commission of the offense Penesa was engaged in a residential burglary (§ 190.2, subd. (a)(17)). The jury also found true Penesa personally and intentionally discharged a firearm (a shotgun) causing Judy's death (§ 12022.53, subds. (b), (c), (d)). Further, the jury found Penesa guilty of the attempted willful, deliberate, and premeditated murder of Maria (§§ 187, subd. (a), 664)) and first-degree residential burglary (§ 659), and it found true the special allegation Penesa personally and intentionally used and discharged a firearm in the commission of the attempted murder (§ 12022.53, subds. (b), (c)). The trial court sentenced Penesa to an aggregate state prison term of life without the possibility of parole plus a life term, plus 36 years.[4]

---

[4] On count 1 for murder the court sentenced Penesa to life without the possibility of parole, plus 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)). On count 2 for attempted murder the court sentenced Penesa to life, plus 20 years on the firearm enhancement (*id.*, subd. (c)). On count 3 for burglary the court sentenced Penesa to 16 years in state prison (the upper term of six years plus 10 years under section 12022.5, subdivision (a)(1)).

B.    *Penesa's Petition for Resentencing and the Trial Court's Ruling*

On April 23, 2020 Penesa, representing himself, filed a form petition for resentencing seeking to vacate his murder conviction and be resentenced in accordance with recent statutory changes relating to accomplice liability for murder. In his petition, Penesa declared he was convicted of murder under the felony murder rule or the natural and probable consequences doctrine and could not now be convicted of murder because of changes made to Penal Code sections 188 and 189. He also stated he was convicted of felony murder, he was not the actual killer, he did not intend to kill, and he was not a major participant in the felony and did not act with reckless indifference to human life during the course of the murder. Penesa requested the court appoint him counsel.

The People opposed the petition on the basis Penesa was the actual killer and therefore ineligible for resentencing. The People attached to their opposition this court's opinion in *Penesa I, supra*, B136925, as well as the jury's verdict on the murder count. Penesa filed a response to the People's opposition (labelled a "traverse"), arguing there was no direct evidence he was the actual killer and the special circumstance finding did not make him ineligible for sentencing.

On December 2, 2020 the trial court summarily denied Penesa's petition without appointing counsel, finding Penesa was ineligible for resentencing as a matter of law because he was the actual killer. The court explained, "Petitioner was convicted of first degree murder during a burglary, premeditated, willful, and deliberate attempted murder both with personal use and

7

discharge of a firearm. Petitioner admitted the crimes to family members. Petitioner's conviction was upheld on appeal. As the actual shooter, petitioner is ineligible for re-sentencing pursuant to Penal Code [section] 1170.95."

Penesa timely appealed.

## DISCUSSION

A. *Senate Bill Nos. 1437 and 775*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848; see *People v. Strong* (Aug. 8, 2022, S266606) ___ Cal.5th ___ [2022 Cal.LEXIS 4563, *1-2].) The legislation also provided a procedure (now codified in section 1172.6) for an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189. (*Lewis*, at p. 959; *Gentile*, at p. 847.)

If the section 1172.6 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the court must appoint counsel to represent the petitioner upon his or her request pursuant to section 1172.6, subdivision (b)(3). Further, upon the filing of a facially sufficient

8

petition, the court must direct the prosecutor to file a response to the petition and permit the petitioner to file a reply, and the court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (See § 1172.6, subd. (c).) Where a petitioner makes the requisite prima facie showing he or she falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).)

At the time Penesa filed his petition, the Courts of Appeal agreed that, by its express terms, former section 1170.95 as enacted by Senate Bill 1437 did not provide relief for a petitioner convicted of attempted murder. However, section 1172.6, subdivision (a), now provides for relief where the petitioner was convicted of "attempted murder under the natural and probable consequences doctrine" and "could not presently be convicted of . . . attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a) & (a)(3).)

B.    *The Trial Court's Error in Denying Penesa's Petition for Resentencing of His Murder Conviction Without Appointing Counsel Was Harmless*

1.    *The trial court erred in failing to appoint counsel*

Penesa contends, the People concede, and we agree the trial court erred in summarily denying Penesa's petition for resentencing without appointing counsel because he filed a facially sufficient petition. Under *Lewis, supra*, 11 Cal.5th 952, which was decided seven months after the superior court's ruling denying Penesa's petition, once a petitioner files a facially

9

sufficient petition under section 1172.6 and requests appointment of counsel, the superior court must appoint counsel before performing a prima facie review under section 1172.6, subdivision (c). (*Lewis*, at p. 963 ["petitioners who file a complying petition requesting counsel are to receive counsel upon filing of a compliant petition"].) As discussed, pursuant to the amendments to former section 1170.95 under Senate Bill 775, section 1172.6, subdivision (b)(3), now likewise provides for appointment of counsel at the prima facie review stage. (§ 1172.6, subd. (b)(3).) Under *Lewis* and Senate Bill 775, therefore, it was error for the trial court to deny Penesa's petition for resentencing without first appointing counsel.

   2.   *The error in failing to appoint counsel was harmless*

Failing to appoint counsel for a petitioner at the prima facie review stage is state law error only, reviewable for prejudice under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis, supra*, 11 Cal.5th at pp. 957-958, 973-974.) As the *Lewis* court explained, "[A] petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing."'" (*Id.* at p. 974.)

The People contend that because the jury found true that Penesa personally and intentionally discharged a shotgun causing Judy's death, Penesa was the actual killer and ineligible for relief under section 1172.6. Penesa responds that the true finding on the firearm enhancement does not necessarily mean that Penesa was the actual killer, relying on *People v.*

10

*Offley* (2020) 48 Cal.App.5th 588. However, in *Offley* the issue was not whether the defendant (Dana Offley) was the actual killer, but whether he acted with actual malice. Offley was one of five defendants who took part in a gang-related shooting; the defendants were charged with murder, attempted murder, and shooting into an occupied vehicle. (*Id*. at p. 592.) Although the defendants were not charged with conspiracy, the People presented evidence of a conspiracy among the defendants, and the court instructed the jury that a member of a conspiracy is guilty not only of the particular crime he knows his confederates agreed upon and committed, but also for the natural and probable consequences of any crime of a coconspirator to further the objective of the conspiracy. (*Id*. at p. 593.) The jury convicted Offley of the three charged crimes, and the jury found true that he had personally used and intentionally discharged a firearm proximately causing the victim's death. (*Ibid*.) The superior court summarily denied Offley's petition under former section 1170.95, but the Court of Appeal reversed, explaining Offley had been convicted of murder under the natural and probable consequences doctrine, and "[b]ecause an enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought."[5] (*Offley*, at p. 598.) The court observed, "The jury might have concluded that Offley intended to take part in a conspiracy to commit assault with a firearm, or to fire into an occupied vehicle, with the aim of either injuring or

[5]    The jury in *Offley* was not instructed on the felony murder doctrine.

11

merely frightening [the victim]. The jury could have then concluded that [the victim's] death was the natural and probable consequence of the conspiracy and convicted [Offley] of murder without finding beyond a reasonable doubt that he acted with malice aforethought. For this reason, we cannot say that Offley 'is ineligible for relief as a matter of law.'" (*Id*. at p. 599.)

In contrast to *Offley*, the jury here was not instructed on a conspiracy theory or the natural and probable consequences doctrine. Instead, the jury was instructed with CALJIC No. 8.10 that to prove the offense of murder, it needed to find a human being was killed, the killing was unlawful, and "the killing was done with malice aforethought or occurred during the commission or attempted commission of burglary." Further, the jury was instructed that to find the firearm enhancement true under section 12022.53, subdivision (d), the jury needed to find that Penesa "intentionally and personally discharged a firearm and proximately caused great bodily injury to a person, Elba [Judy] Rodriguez, not an accomplice to the crime, in the commission of the crime charged."[6] Therefore, even if the jury found Penesa guilty of murder under the felony murder rule, under amended section 189, subdivision (e)(1), he would be guilty of murder today as the "actual killer" regardless of whether he had the intent to kill.

Penesa is therefore ineligible for resentencing under section 1172.6 as a matter of law because he continues to be guilty of murder under sections 188 and 189 as amended by

_____

[6] The instruction referred to a finding that Penesa proximately caused great bodily injury to Judy, but the jury found true on the verdict form that Penesa proximately caused great bodily injury and death to Judy.

12

Senate Bills 1437 and 775.  (See *People v. Mancilla* (2021) 67 Cal.App.5th 854, 864, 866 [error in not appointing counsel before denying facially sufficient petition was harmless because defendant was convicted under a theory of liability not affected by Senate Bill 1437].)  Because there is no reasonable probability Penesa would obtain a more favorable result if on remand the trial court were to appoint counsel and allow counsel an opportunity to file a memorandum supporting Penesa's petition, the court's error in denying Penesa's petition was harmless. (See *People v. Watson, supra*, 46 Cal.2d at p. 836.)[7]

C.    *Penesa Is Not Entitled to Resentencing for His Attempted Murder Conviction Because the Jury Was Not Instructed on the Natural and Probable Consequences Doctrine*

The People contend Penesa is ineligible for resentencing because even if he had included allegations in his petition pertaining to attempted murder, the jury was instructed that to find Penesa guilty of attempted murder, it had to find Penesa acted with actual malice, and further, the jury was not instructed on the natural and probable consequences doctrine.  The People are correct.  The trial court instructed the jury with CALJIC No. 8.66 that to prove Penesa guilty of attempted murder, it must be proved that a "direct but ineffectual act was done by one person toward killing another human being" and "[t]he person

---

[7]    Because we conclude Penesa is ineligible for relief as the actual killer, we do not reach his alternative contention that the jury's special circumstance finding did not render him ineligible for resentencing because he was convicted prior to the Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522.

13

committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." The court did not instruct the jury on either aiding and abetting principles (CALJIC No. 3.01) or the natural and probable consequences doctrine, and therefore the jury's finding that Penesa was guilty of attempted murder necessarily meant he was the person who committed the act and harbored "a specific intent to kill." Accordingly, Penesa is ineligible for relief under section 1172.6, subdivision (a). (*People v. Daniel* (2020) 57 Cal.App.5th 666, 677 [error in denying petition was harmless because defendant was ineligible for resentencing for second degree murder conviction where jury was not instructed on felony murder or murder under a natural and probable consequences theory].)

## DISPOSITION

The order denying Penesa's petition for resentencing is affirmed.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.

14